Ilir Lecaj, man
15 Juniper Street
Ipswich, MA, 01938



# DISTRICT COURT OF UNITED STATES
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Ilir Lecaj, a natural person,  )  | |
| *Claimant* ) | CASE NR: _____ |
| ) | |
| *Vs.* ) | VERIFIED CLAIM FOR DAMAGES |
| ) | |
| CAVALRY SPV I, LLC.  ) | **TRIAL BY JURY DEMANDED** |
| *Respondents*  ) | |
| ) | |

**COMES NOW,** the Claimant, Ilir Lecaj, a consumer and natural person, filing this claim;

## INTRODUCTION

1. This claim is an action brought by the Claimant for violation Consumer Protection Laws. Respondent Cavalry SPV I, LLC is a debt collector and attempts to collect the purchased defaulted debts directly from consumers. In trying to collect the Respondent has violated M.G.L. c. 93 §2, 940 CMR 7.00, FCRA (15 USC 1681p), FDCPA (15 USC 1692) and Invasion of Privacy by violating MGL Ch.93, §66

**I.**               **THE PARTIES**

2. The Claimant, Ilir Lecaj, is now and at all times relevant to this action an American National and Natural Person. Claimant is a "consumer" as that term is defined within M.G.L. c. 93, §49, (940 CMR 7.00) and 15 U.S.C. §1692a(3).

3. Respondent CAVALRY SPV I, LLC, is a debt collection company, formed under the laws of the state of Delaware, registered to do business in the Commonwealth of Massachusetts. It has a principle place of business located at 4050 E. COTTON CENTER BLVD., BUILDING 2, SUITE 20 PHOENIX, AZ 85040 USA.

Respondent CAVALRY SPV I, LLC is "debt collector" as that term is defined by M.G.L. c. 93A, § 2, (209 CMR 18.02) and FDCPA 1692a (6), and a furnisher of information per FCRA, 15 U.S.C. §1681s-2.

## II. JURISDICTION AND VENUE

**4.** The District Court of the United States has jurisdiction pursuant to 15 U.S.C.§1692 et, al, and 15 U.S.C.§1681p et, and MGL 93, Sec 24c. The Respondent is registered to do business in Massachusetts. Respondent caused injury to a natural person within this state, to Claimant, Ilir Lecaj, while it was engaged in debt collection activities, to wit, within this Commonwealth. The court has concurrent jurisdiction over Claimant tort state claims. Venue is proper as the occurrences which give rise to this action took place within the Massachusetts Commonwealth.

## III. STATEMENTS OF FACTS

**5.** On and about October 16, 2014 this Claimant obtained his Credit Report with Trans Union. This Claimant discovered that on Feb 20, 2014 the Respondent Cavalry SPV I, LLC obtained the Claimant's credit file without a permissible purpose with Trans Union Credit Bureau. (See exhibit A).

**6.** On or about Nov 6th, 2014, this Claimant sent a Dispute and Intent to Sue letter to Cavalry. Claimant disputed the Respondent's credit inquiry with Trans Union and requested to provide the permissible purpose for obtaining the credit file of the Claimant and warned with the "intent to sue" Cavalry if cannot show any reason for obtaining the credit file. (See exhibit B).

**7.** On or about Nov 4th, 2014, this Claimant sent to Trans Union disputed letter in-between others demands this Claimant requested that the credit inquiry of CAVALRY to be removed because is impermissible inquiry. (See exhibit C).

**8.** On and about June 2, 2015 the Wife of this Claimant obtained her Credit Report with Trans Union. The Claimant's wife discovered that on Dec 3, 2014 the Respondent Cavalry SPV I, LLC has obtained the Claimant's wife credit file without a permissible purpose with Trans Union Credit Bureau under the Account Review Inquiries. (See exhibit D).

**9.** On and about of June 2, 2012 this Claimant obtained a new credit report from Trans Union, the credit inquiry of Feb 20, 2014 was deleted but a new un-permissible inquiry was recorded on April 9, 2015 under the Account Review Inquiries. (see exhibit E)

**10.** On and about April 15, 2015, this Claimant received a letter from Cavalry SPV I, LLC. The purpose of the letter was to inform the Claimant about an "alleged debt that was

acquired by Cavalry SPV I, LLC. The dunning letter contains the logo of Capital One on top. (see exhibit F)

**11.** On and about July 16, 2015, this Claimant obtained his new credit report from Experian and realized that Cavalry has started reporting trade line since June of 2015 for an "alleged account" with an "alleged amount". (see exhibit G)

**12.** On and about Aug 5, 2015 this Claimant received the first Dunning Letter from Cavalry. Cavalry notifies this Claimant that the Respondent **bought** the "alleged debt" from Capital One and now Cavalry is the new "**CREDITOR for the account**" (see exhibit H)

**13.** On and about Aug 11, 2015 this Claimant disputed the trade line that was being reported from Cavalry with Experian. The Dispute was filed on line. (see exhibit I)

**14.** On and about August 11, 2015 this Claimant received Investigation Results of the dispute filed with CFPB on July 14, 2015. Result: it is verified Updated, it shows that "it is disputed". Same time, the Respondent, Cavalry SCPV I, pulled the credit file again on Aug 10, 2015 (see exhibit J)

**15.** On and about Aug 13, this Claimant sent a dispute of debt, verification and validation of it to the Respondent. The letter was delivered on 8-17-2015 and no verification and validation has been sent yet to the Claimant. (see exhibit K)

**16.** On about Aug 31, 2015 this Claimant obtained a new credit report from Trans Union. The Claimant realized that Cavalry SPV I is reporting trade line with Trans Union too. It notes that this alleged account is placed for collection on April 17, 2015. In the same report the Respondent obtained the credit file of the Claimant. (see exhibit L)

**17.** On about Sep 1, 2015 this Claimant sent an "Intent to Sue" letter to the Respondent and gave the Respondent 3 weeks time to answer. As of the writing of this complaint, Cavalry has not answer the Intent to Sue letter. (see exhibit M)

**18.** On and about Sep 2, 2015 this Claimant sent a dispute letter to Trans Union, disputing the trade line and the credit pull of the Aug 10, 2015. Cavalry has not yet answered the dispute and inform the consumer about its investigation. (see exhibit N)

**19.** On and about Oct 6, 2015 this Claimant received the answer of the dispute sent to Trans Union on Sep 2. The dispute is "verified" and there is "No Change" (see exhibit O)

**20.** On and about Oct 09, 2015 this Claimant received from **Secretary of the Massachusetts Commonwealth** the answer of UCC 11 search and it shows that there is no debt recorded and there is no "alleged debt" at all (see exhibit P)

**21.** On and about January 11, 2016 this Claimant sent another Demand for Validation to Cavalry SCV I. With this letter the Claimant requested to provide to him account level documentation pursuant to the most recent ruling of CFPB and chain of title of the "alleged debt". I have yet to see Validation or any account level documentation. (see exhibit Q)

**22.** On and about January 11, 2016 this Claimant sent two more Trade Line dispute to Trans Union and Experian. In these letters the Claimant disputed the credit inquiries of Respondent Cavalry SPV I and the investigation procedure that Trans Union, Experian and Cavalry will be conducting on this dispute. (see exhibit R)

**23.** On and about January 25, 2016 this Claimant obtained the Credit report from Experian and there is still no change in Trade Line reporting and Credit pulls are still there. (see exhibit S)

**24.** On and about February 8, 2016 this Claimant realized that neither Cavalry SPV I LLC nor Cavalry Portfolio Services LLC are registered as debt collectors in Massachusetts. In Respondent's filing with the Secretary of Commonwealth, CAVALRY is registered as: **"Purchase of Performing And Non-Performing Receivables". (see exhibit T)**

**25.** On and about Feb 6, 2016 this Claimant obtained a new Credit report from Trans Union as a result of the dispute sent on January 11. Trans Union answer was: "It is Verified, No Change". There is still no change on Trade Line reporting and Credit inquiries are still there. (see exhibit U)

## IV.                                 FIRST CAUSE OF ACTION
## VIOLATION OF FDCPA 15 U.S.C. §1692c(b) and 209 CMR 18.14(2) COMMUNICATING WITH THIRD PARTIES

**26.** Paragraphs 1-25 are re-alleged as though fully set out herein.

**27.** Claimant is a "consumer" and natural person within the meaning of the MGL 93 Chapter 24 and/or CMR 209, 18.16(8), and FDCPA 15 USC §1692a (3)

**28.** The Respondent CAVALRY is a "debt collector" within the meaning of FDCPA 1692a(6) and M.G.L. Ch. 93 §24 and/or CMR 209, 18:02.

**29.** The Respondent CAVALRY is a stranger to the Claimant. Claimant has no contractual relationship with Respondent CAVALRY and has never applied for credit or any other service with the Respondent.

**30.** The Respondent CAVALRY communicated with this Claimant without out his "prior consent". FDCPA 1692c(b) and 209 CMR 17.14(2) equally say:

## COMMUNICATION WITH THIRD PARTIES.

*Except as provided in section 804, without the **prior consent of the consumer** given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.*

**31.** This Claimant believes that CAVALRY violated FDCPA 1692 c(b) and 209 CMR 18.14(2). The Respondent, CAVALRY, a third party debt collector did not send a letter to ask for Claimant's consent to talk or communicate about an alleged "account" or alleged "debt". CAVALRY pulled Claimant's credit and started reporting, which is a communication, without prior consent of the Claimant.

**32.** This Claimant has suffered significant economic harm as a result of the erroneous credit reporting and failure to verify and or validate their "alleged account" although requested.

**33.** This Claimant believes that CAVALRY violated FDCPA 1692b(2) and 209 CMR 18.13(2) by using "false, deceptive, or misleading representation" by alluding that the Claimant owes them a "debt" and expressing the "legal status of the debt", so violating 1692e(2) and 209 CMR 18.16(2). (See exhibit H).

**34.** This Claimant believes that the Respondent CAVALRY violated FDCPA 1692e(2) and 209 CMR 18.16(2) by using "false, deceptive, or misleading representation". In Respondent's Dunning Letter, Cavalry uses interchangeably words "debt" and "account". Cavalry never clarified "what account" and/or "what debt" or how Cavalry became "the creditor for the account". In Respondent's dunning letter says that Cavalry "bought the account". How did Cavalry buy a totally new "account" number, totally different from the original "creditor". It is very confusing for the "unsophisticated consumer". (See exhibit H)

## V.   SECOND CAUSE OF ACTION
## VIOLATION OF FDCPA 15 U.S.C.§1692g(a), and 209 CMR 18.18(1) And 209 CMR 18.16 (14) and 15 USC 1692e(14)

**35.** Claimant incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

**36.** Claimant is a "consumer" within the meaning of the MGL 93 Chapter 24 and/or CMR 209, 18:02, and FDCPA 15 USC §1692a (c)

**37.** Claimant consumer credit report is a consumer report within the meaning of the FCRA, 15 USC§1681(a)(cl).

**38.** The Respondent CAVALRY is a "debt collector" and a stranger to the Claimant. Claimant has no contractual relationship with Respondent CAVALRY and has never applied for credit or services with the Respondent.

**39.** This Claimant assumes that first communication from Cavalry was established when Cavalry SPV I obtained Claimant's Credit File on Feb 20, 2014 (Exhibit A). The second communication was established when Cavalry reported Trade Line with Trans Union and Experian (See exhibit G & L). There was no dunning letter received pursue to 1692g [a](1-5) and 209 CMR 18.18(1) up to August 12, 2015. This Claimant never received any dunning letter from Cavalry SPV I, LLC. The first Dunning Letter that Cavalry Portfolio Services LLC sent to the Claimant was more than a year after first and second communication.

**40.** By not sending a dunning letter to the "consumer", Cavalry violated 209 CMR 18.13(1) and 15 USC 1692g(a) that in part says:

*(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --*

*(1) the amount of the debt;*

*(2) the name of the creditor to whom the debt is owed;*

*(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;*

The Respondent CAVALRY have violated the 5 day FDCPA rule.

**41.** False and Misleading Representation: violation of 209 CMR 18.16 (14) and 15 USC 1692e(14) in the first information letter used the **Capital One Logo** (see exhibit F).

209 CMR 18.16 (14) related to misleading representation in part says:

*(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.*

**42.** WHEREFORE, Claimant demands judgment for damages against Cavalry SPV I, LLC for actual or statutory damages $1000 per violation, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1681n.

## VI. THIRD CAUSE OF ACTION
## VIOLATION OF 15 U.S.C.§1681b(f) FCRA and MGL Ch.93, §51(3)
## UNPERMISSABLE CREDIT INQUERIES

**43.** Claimant incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

**44.** Claimant is "consumer" within the meaning of the 209 CMR 18.02 and FCRA, 15 U.S.C.§1681a(c).

**45.** CAVALRY SPV I, LLC is a furnisher of information within the meaning of the M.G.L Chapter 93, Sec 54(a) and FCRA, 15 USC. §1681s-2.

**46.** Experian and Trans Union are consumer reporting agencies as defined in 15 U.S.C. §1681(f), regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. §1681(a)(b), to third parties for monetary compensation.

**47.** Cavalry SPV I violated FCRA by obtaining Claimant's Credit File. FCRA's permissible purpose gives right to inquire the credit file only on behalf of the Creditor. The Respondent violated FCRA by making representation expressly that the consumer, Claimant, owes a "debt" to CAVALRY at that time without **substantiate the representation**. (See CFPB – ENCORE Consent Decree Orders). CAVALRY, Experian and Trans Union willfully violated the FCRA. Respondent's violations include, but are not limited to, the following:

    **(a)** CAVALRY willfully violated M.G.L Ch 93, Sec 49 and 15 U.S.C. §1681b(f) by obtaining Claimant's consumer report without a permissible purpose as defined by 15 U.S.C. §1681b.

**48.** On the FTC Staff Report with Summary of Interpretations **"40 Years of Experience with the FCRA"**, page 44 (3)(B), FTC and later supported by CFPB, defines the "permissible purpose". Here is what in short says: **(see Exhibit G)**

B. <u>**Debt collection**</u>. A collection agency, detective agency, private investigator, or attorney has a permissible "collection" purpose under this section to obtain a consumer report on a consumer for use in obtaining payment of that consumer's account on <u>**behalf of a creditor**</u>. A creditor may obtain a consumer report on an existing account to formulate its collection strategy. An attorney collecting a debt for a creditor client has a permissible purpose to obtain a consumer report on the debtor to the same extent as the client.

**49.** Claimant has suffered significant economic harm as a result of the erroneous credit pulls and failure to verify and or validate their alleged debt although requested. The Respondent obtained Claimant's credit report FOUR times: With Trans Union-First on Feb 20, 2014, **(Exhibit A)** second on April 9, 2014 **(Exhibit E)**, Third on Aug 10, 2015 **(Exhibit L)**: fourth- With Experian on Aug 10, 2015 **(Exhibit J)**

**50.** WHEREFORE, Claimant demands judgment for damages against Cavalry SPV I, LLC for actual or statutory damages $1000 per violation / per month, and punitive damages, attorney's fees and costs, pursuant to 15 U.S.C. §1681n.

## VII. FOURTH CAUSE OF ACTION
## VIOLATION OF 15 U.S.C.§1681i FCRA, MGL c.93 §54A(a)
## INACURATE INFORMATION - TRADE LINE REPORTING

**51.** Claimant incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

**52.** Claimant is a "consumer" within the meaning of the MGL 93 Chapter 24 and/or CMR 209, 18:02, and FCRA 15 USC §1692a (c)

**53.** Respondent CAVALRY is a "credit furnishers" within the meaning of the M.G.L Chapter 93, Sec 54A and 15 U.S.C.§1681a(c). Both these statutes prohibit furnishers from reporting inaccurate or erroneous information about consumers. As such, it placed an affirmative duty on furnishers to correct and update information which they know, or reasonably should know, is inaccurate. The subsection requires furnishers to flag or otherwise provide notice to credit reporting agencies of any "dispute" by a consumer related to his or her credit information

or history, FCRA, 15 USC§1681s-2(a)(1)-(3). Claimants consumer credit report is a consumer report within the meaning of 15 U.S.C. §1681a (d).

**54.** The M.G.L. c. 93, §54A (f) and FCRA, 15 U.S.C. 1681s-2(b) determines obligations regarding credit furnishers to investigate consumers disputes. Subsection 1681s-2(b) specifies a second set of obligations on a furnisher. These obligations are triggered once a credit reporting agency (CRA) notifies the furnisher that it has received a "notice of dispute" from the consumer pursuant to 15 U.S.C. § 1681s-2(a)(2). After the disputes are received by a CRA from a consumer, it, in turn, is required under § 1681i of the FCRA to forward a consumer dispute verification (CDV) form to the furnisher, requiring it to verify the credit information and investigate its accuracy. After COMPLAINT FOR DAMAGES receiving notice of such a dispute from a CRA, a furnisher has 5 mandatory duties it must perform within 30 days:

> (1) to conduct "an investigation" with respect to the disputed information;
> (2) to "review all relevant information" provided by the credit reporting agency;
> (3) to "report the results of its investigation" back to the credit reporting agency;
> (4) if the investigation finds the existing information is incomplete or inaccurate, to report back those results to each of the consumer reporting agencies to whom the furnisher originally communicated information about the consumer; and
> (5) to "modify,. . .delete. . .or. . .permanently block" the reporting of any item of information found to be inaccurate, incomplete, or which cannot be verified as accurate after a reinvestigation. 15 U.S.C. § 1681s-2(b)(1).

**55.** In §1681s-2(b) duties arise only after a furnisher receives notice of dispute from a CRA. Notice of a dispute to a furnisher by a consumer directly does *not* trigger a furnisher's duty to reinvestigate under §1681s-2(b). The consumer must dispute to a CRA, which, in turn, forwards the dispute to the furnisher. This indirect "filtering" mechanism must be followed by a consumer to give rise to a duty of investigation *under the FCRA* to the furnisher. A furnisher need not honor a dispute received directly from the consumer, whether oral or written, under the FCRA. Such a dispute, it should be noted, likely does create a legal obligation under §1692g of the FDCPA which Claimants served upon Respondent CAVALRY.

**56.** This Claimant notified Respondent CAVALRY of its dispute by mail 3 times, and Respondent CAVALRY also received notice from the two major credit reporting agencies Experian and Trans Union. Respondent CAVALRY failed to delete information found to be inaccurate and erroneous, and or failed to properly investigate Claimant's disputes.

**57.** Claimant alleges that at all relevant times Respondent CAVALRY failed to maintain, and failed to follow reasonable procedures to assure maximum possible accuracy of Claimant's credit report, concerning the accounts in question, violating 15 U.S.C. § 1681e(b). Claimant alleges that Respondent CAVALRY failed to conduct a proper and lawful reinvestigation.

**58.** All actions taken by the Respondent CAVALRY were done with malice, were done willfully, and were done with either the desire to harm Claimants and/or with the knowledge that their actions would very likely harm Claimant and/or that their actions were taken in violation of the FCRA and state law and/or that knew or should have known that their actions were in reckless disregard of the FCRA and state law. Respondent in its acts constitutes multiple willful non-compliance with FCRA.

**59.** All of the violations of the MA Consumer Protection Laws and FCRA proximately caused the injuries and damages to Claimant as set forth in this Claim. This Claimant disputed the alleged debt with the Respondent debt collector CAVALRY and the Respondent could not verify and validate the debt and still continued to report for 6 months **(see Exhibit S and U)** in the row with both: Trans Union and Experian, after the Trade Line dispute. Respondent willful and noncompliant acts is a direct violation of M.G.L Ch 93A and 15 USC§1681(n) respectively.

**60.** Therefore, Claimant demands judgment for damages against Respondent CAVALRY for actual damages, punitive damages, and statutory damages of $6,000 and attorney fees, and costs pursuant to M.G.L c.93A §2, and 15 USC§1681(n).

## VIII. FIFTH CAUSE OF ACTION
## VIOLATION OF 15 U.S.C.§1692 FDCPA and 208 CMR 18.00
## TRYING TO COLLECT WITHOUT VERIFICATION

**61.** Claimant incorporates by reference all of the above paragraphs of this Claim as though fully stated herein.

**62.** Claimant is a "consumer" within the meaning of FDCPA 15 USC §1692a (3) and MGL 93 Chapter 24 and/or CMR 209, 18:02.

**63.** Respondent CAVALRY is a **"debt collector"** within the meaning of the FDCPA 15 USC 1692a(6) and CMR 209, 18:02.

**64.** Respondent CAVALRY has violated 15 UCS 1692e and 940 CMR 7.07 by:

*"use any false, deceptive, or misleading representation or means in connection with the collection of any debt"*

when seek to collect from consumers without first verifying the underlying debt.

**65.** Massachusetts Consumer Protection Laws and FDCPA were passed to help, give remedy and stop the abuse of the debt collectors with unsophisticated consumers. This Claimant is very confused with CAVALRY letters with logo of CAPITAL ONE. Who sent information letters to Claimant's address. For more, there is not a bit of any evidence that shows any chain of transfer, assignment, retain, sale or placement even upon Claimant's demand **(see Exhibit Q)**. This Claimant has received ZERO notification from any of entities that gives CAVALRY any standing or right to collect the "alleged debt". It is my belief that in all these "communications" is "false, deceptive and misleading" means to collect an "alleged debt".

**66.** Respondent CAVALRY were served Notice of Dispute 3 (three) times in compliance with 15 USC 1692g. 16 USC 1692g(5)(b) which requires the Respondent to cease all collection activity until the debt collector obtains verification of the alleged debt. Respondent have failed to provide any proof of their alleged debt, however, Respondent continues to make attempts to collect the alleged debt through erroneous trade line reporting and credit inquires.

**67.** Respondent CAVALRY, violated 15 USC 1692e(9) and 209 CMR 18.16(8) by reporting false "trade lines" with two major credit reporting agencies Experian and Trans Union, which in part says;

> *(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.*

**68.** Respondent CAVALRY has violated 15 USC 1692c(c) and 209 CMR 18.14(3) by continuing to communicate with the Claimant after the dispute of debt,

> *(c) Ceasing communication*
> *If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except....*

**69.** Respondent CAVALRY was fully aware that they could not provide **Consumer Account Level Documentation** as ordered from **CFPB** on **The Encore Consent Order Decree**. Cavalry was also unable to provide a performance contract executed by Claimant, whereby the Claimant is obligated to the Respondent CAVALRY.

**70.** Therefore Respondent is liable to Claimant for damages to their consumer credit reports which resulted in higher auto insurance premiums, higher interest rates, intentional infliction of emotional distress, insomnia, embarrassment, loss of sleep, loss of happiness, anxiety, and other related damages due to Respondent's acts. Respondent is therefore liable unto

Claimant pursuant to 15 USC§1692k and MGL 93A §9 in the amount of $1000 plus punitive, consequential, and actual damages.

## IX.     SIXTH CAUSE OF ACTION
### VIOLATION OF 15 U.S.C.§1692e(2), FDCPA and 209 CMR 18.16 FALSE AND MISLEADING REPRESANTATION.

**71.** Previous paragraphs are re-alleged as though fully set out herein.

**72.** Claimant is a "consumer" within the meaning of the MGL 93 Chapter 24 and/or 209 CMR 18:02, and FDCPA 15 USC §1692a (c)

**73.** The Respondent CAVALRY is a "debt collector" as defined in 1692a(6) and M.G.L. Ch. 93 §24 and/or CMR 209, 18:02. The Respondent is a stranger to the Claimant. Claimant's has no contractual relationship with Respondent CAVALRY and has never applied for credit or services with the Respondent.

**74.** This Claimant received communications from Cavalry (see Exhibit X) was established when Cavalry SPV obtained Claimant's Credit File on Feb 20, 2014 (Exhibit F). The respondent Cavalry, in their information and Dunning Letters uses words like:
   *Your credit card account with a balance of $(such) was acquired by Calary SPV I, LLC*
and later says
   *"Cavalry SPV I, LLC **own your account** and ..."*

In the second Dunning letter (exhibit F) the Respondent CAVALRY says:

   *Calary SPV I, LLC purchased the Capital One Bank (USA), N.A. account listed above and is now the **new creditor** for the account. Calary SPV I, LLC has referred the account to Cavalry Portfolio Services, LLC for servicing"*

   Later in the same letter Respondent Cavalry refers to the *"account" some time as "debt"*

**75.** This Claimant is very confused by the language used in these letters. First off: For the same **"account"** the Claimant has received another letter from a Law Office called J.C.Christensen. Who is the owner of the alleged **"account"**? Who purchased it and how? There is no proof of the purchase in any of the correspondence? How can a Person buy an **"account"**? How did Respondent CAVALRY become a **"creditor"**?. What does it mean the **"creditor of the account"**? CVALRY crates a new account, attaches Claimant's name and demands payments: how does that work? What law is that based on? Where does the Respondent find Standing?

Here is the definition of the account from **15 USC 1693**

*(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this title), as described in regulations of the Bureau, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;*

**76.** This Claimant believes that these letters violate 1692e(10) and 209 CMR 18.16(10) for false and deceptive means to collect an alleged debt.

## X.         SEVENTH CAUSE OF ACTION
## INVASION OF PRIVACY – VIOLATION OF MGL Ch.93, §66

**77.** Claimant incorporates by reference all of the above paragraphs of this Claim as though fully stated herein.

**78.** Respondent CAVALRY is a "debt collector" and a stranger to the Claimant. Claimant has no contractual relationship with this Respondent, and has never applied for credit or any other services with the Respondent.

**79.** On or about these dates, the Respondent illegally obtained Claimant's credit report FOUR times: With Trans Union-First on Feb 20, 2014, **(Exhibit A)** second on April 9, 2014 **(Exhibit E),** Third on Aug 10, 2015 **(Exhibit L)**: fourth-With Experian on Aug 10, 2015 **(Exhibit J).** Respondent CAVALY illegally obtained Claimant's wife's credit Report **(see, "Exhibit D").** Respondent CAVALRY is not a creditor, therefore, by illegally obtaining Claimant's consumer credit reports constitutes a Tort claim for Invasion of Privacy.

**80.** The Claimant's right to privacy is also an enumerated Constitutional right, both in the Commonwealth and Federal Constitution. Claimant has been damaged in that their proprietary, confidential, most personal information, it was unlawfully and illegally breached by Respondent CAVALRY. Importantly, Claimant is most concerned with the fact that Claimant "did not" provide his and his wife's social security numbers to the Respondent. Claimant supports this assertion by the mere fact that no credit, application or services was applied nor received from the Respondent.

**81.** Claimant has the right to discovery, to determine where Respondent obtained their personal, private information from. Specifically Claimant will investigate through CLAIM FOR DAMAGES discovery where Respondent obtained Claimant's social security number from, and what additional proprietary information was obtained by the Respondent unlawfully, and how that information is being used. Respondent CAVALRY may also be guilty of identity theft under state and federal law.

82. Massachusetts further recognizes the Claimant's right to be free from invasions of privacy, thus Respondent violated Massachusetts General Law Chapter 93, §66 that says:

> *Section 66. Any person who knowingly and willfully obtains information relative to a consumer from a consumer reporting agency under false pretenses shall be punished by a fine of not more than $5,000 or by imprisonment for not more than one year, or both.*

83. The Restatement of Torts, Second, § 652(b) defines intrusion upon seclusion as, "One who intentionally intrudes…upon the solitude or seclusion of another, or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person."

84. The Respondent intentionally intruded upon Claimant's right to privacy by continually harassing the Claimant by inquiring his Wife's and Claimant's credit file.

85. The conduct of the Respondent in engaging in the unlawful collection activities resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable consumer and natural Person.

86. As a result of the intrusions and invasions, the Claimant is entitled to actual damages in an amount to be determined at the trial.

87. All acts of Respondent and its agents were committed with malice, intent, wantonness, and recklessness, and as such, Respondent is subject to punitive damages.

## XI.      EIGHTH CAUSE OF ACTION
## COLLECTING DEBT WITHOUT LICENCE
## VIOLATION OF MGL Ch.93, §24A AND 209 CMR 18.04

88. Claimant incorporates by reference all of the above paragraphs of this Claim as though fully stated herein.

89. M.G.L. c. 93, §24 through 28 and 209 CMR 18.04 operation in the Commonwealth of Massachusetts as "debt collectors" without being licensed to carry this business.
M.G.L. c. 93, §24A in general says:

> *(a) No person shall directly or indirectly engage in the commonwealth in the business of a debt collector, or engage in the commonwealth in soliciting the right to collect or receive payment for another of an account, bill or other indebtedness, or*

*advertise for or solicit in print the right to collect or receive payment for another of an account, bill or other indebtedness, without first obtaining from the commissioner a license to carry on the business, nor unless the person or the person for whom he or it may be acting as agent has on file with the state treasurer a good and sufficient bond.*

And M.G.L. c. 93, §24H (b) partially says:
*A violation of this chapter shall also be a violation of chapter 93A.*

## **PLAINTIF DEMANDS**
## **WHEREFORE,**

Claimant demands judgment be entered against Respondent: CAVALRY SPV I

1. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Respondents;
2. Statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) per each violation;
3. Actual damages sustained by Respondent pursuant to 15 U.S.C. § 1692k(a)(2); see the attached bill
4. Statutory violations and actual damages, punitive damages of $6,000, pursuant to 15 U.S.C. §1681n (a) (3) and 15 U.S.C. §1681o (a).
5. Statutory violations pursuant MGL Ch. 93 Sec.66 - $5,000 for invasion of privacy.
6. Double or treble damages plus reasonable attorney's fees pursuant to M.G.L. c. 93A § 3(A);
7. Punitive damages, compensatory damages in an amount determine by law;
8. Such other and further relief as may be just and proper determine by law, at trial, or by the court.
9. Attached with this claim is the Bill for damages caused by Respondent Cavalry to the Claimant.

It is my wish that this Court will double and triple the amounts calculated above..

**I state under penalty of perjury, under the laws of the United States of America that the forgoing facts are true and correct.**

Date 5/18/2016       By *Ilir Lecaj*
                        Consumer, Claimant